## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BOBBY E. Y.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No. 20-CV-438-CDL** |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,[1]** | ) |
| | ) |
| **Defendant.** | ) |

## <u>OPINION AND ORDER</u>

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. For the reasons set forth below, the Commissioner's decision is **affirmed**.

### I.    Standard of Review

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S.Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). The court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Procedural History

On May 25, 2018, Plaintiff protectively filed a Title II application for disability insurance benefits, alleging a disability onset date of March 9, 2017. The ALJ determined

that Plaintiff has insured status through December 31, 2022. (Doc. 15, R. 17). Plaintiff was 56 years old on his alleged onset date. (R. 69).

Plaintiff has a high school and trade-school education. (R. 42). Before his alleged disability, Plaintiff worked as cable television installer. He alleged disability due to anxiety, insomnia, high blood pressure, acid reflux, and allergies. (R. 211).

Plaintiff's claim was denied initially and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). ALJ Jeffrey S. Wolfe held a hearing on August 29, 2019, at which Plaintiff testified and was represented by Stephen Gragg, a non-attorney representative. A vocational expert (VE), Diana L. Kizer, also testified at the hearing. *Id.* The ALJ denied benefits in a decision dated September 16, 2019. (R. 27). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on July 7, 2020. (R. 1-5). As a result, the ALJ's decision became the final decision of the Commissioner. Plaintiff then timely appealed to the district court by filing the Complaint on August 29, 2020. (Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's September 16, 2019 decision under 42 U.S.C. § 405(g).

## III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe

3

impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

Here, the ALJ determined at step one that Plaintiff has insured status through December 31, 2022 and has not engaged in substantial gainful activity since his alleged disability onset date of March 9, 2017. (R. 17-18).

At step two, the ALJ found that Plaintiff suffers from the severe impairments of generalized anxiety disorder and insomnia. *Id*. The ALJ found the following non-severe impairments: right knee osteoarthritis, hypertension, and reflux. (R. 18-19).

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal a Listing. The ALJ discussed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. (R. 14); *see* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that Plaintiff has a mild limitation in understanding, remembering, and applying

4

information; a mild limitation in interacting with others; a mild to moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 19-20). Because Plaintiff does not have at least one extreme or two or more marked limitations, the ALJ found the paragraph B criteria are not satisfied. The ALJ also considered the "paragraph C" criteria (for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined that they are not present. (R. 18).

At step four, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform

> a full range of work at the heavy level and all exertional levels. He is able to lift and carry 100 pounds occasionally and 50 pounds frequently.  He is unable to drive at night.

(R. 20). Citing the hearing testimony of Plaintiff and the VE, the ALJ found that Plaintiff can return to his past relevant work, as a cable television installer, as generally performed. (R. 26). Accordingly, the ALJ found Plaintiff not disabled at step four. (R. 26-27).

## IV.    Discussion

Plaintiff argues that (1) the RFC is not supported by substantial evidence, (2) the ALJ improperly relied on the VE's testimony in finding Plaintiff could perform his past relevant work, (3) the ALJ failed to conduct a proper analysis of Plaintiff's subjective statements, and (4) the ALJ erred by failing to rule on Plaintiff's post-hearing objections to the VE's testimony. Defendant contends the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards.

A.     **RFC**

Before his alleged disability, Plaintiff worked as a cable television installer for approximately 29 years. (R. 46). He testified that he stopped working because, after being transferred to Oklahoma from Missouri, he was asked to go on standby during nights and weekends and perform jobs in another location, "an hour-and-a-half away," in an area he was not familiar with. (R. 46-47). His job would have also required him to go out at night. *See id*. Plaintiff testified that he could not perform those duties because he takes Xanax, a benzodiazepine, and may not drive within four hours of taking a dose. (*See* R. 47-48).

The ALJ's RFC determination provided that Plaintiff cannot be required to drive at night, due to his prescribed medication. However, Plaintiff argues that medical source evidence supports further limitation of the RFC in connection with his medication. Plaintiff asserts that a limitation to driving at night is not sufficient, because sometimes he takes Xanax during the day. (*See* Doc. 17 at 15 & n.7).

Plaintiff takes Xanax for anxiety, and he testified that it also helps him sleep. (R. 48). Plaintiff regularly takes Xanax at night, but he testified that at times, he took Xanax during the day "in low dosages." (R. 49). He said his doctor had instructed him to "take a third of [a] dose in the day if [he is] really struggling, but try to avoid it." *Id*.  Plaintiff was cautioned that he should not drive while taking Xanax. *See id*. In September of 2016, Plaintiff reported that he was taking 1/3 of a Xanax pill each in the morning and afternoon. (R. 21-22). On November 9, 2017, Mickey Tyrrell, M.D., Plaintiff's treating physician, noted that Plaintiff "was trying to limit his use of Xanax, but was taking it at night and

6

sometimes during the day." (R. 22).

Dr. Tyrrell treated Plaintiff for generalized anxiety and prescribed Xanax "as needed." (R. 25, 351). In a letter dated September 25, 2017 Dr. Tyrrell addressed a questionnaire he received from an insurance company in connection with Plaintiff's claim for long-term disability. (R. 347-348). The questionnaire asked, "Does [Plaintiff] have the ability to safely drive a commercial vehicle?" (R. 347). Dr. Tyrrell stated that

> generally [Plaintiff] can operate a commercial vehicle. [Plaintiff] cannot, however, operate a commercial vehicle while he is taking the medications I have prescribed, including Xanax. Generally, . . . [Plaintiff] takes the medication I prescribed for him in the evening and can drive a commercial vehicle during the day provided he is not in need of further medication during the day. Obviously, [Plaintiff] cannot accept call[sic] during the evenings after he has taken the medication and should not drive a commercial vehicle when he feels it is necessary to take Xanax or other medications which I have prescribed which may impair his ability to operate any vehicle, including a commercial vehicle. The full answer to your question is therefore: Yes, unless he has taken Xanax within 4 hours of being asked to drive a commercial vehicle.

(*Id.*; *see* R. 23-24).

Plaintiff objects to the ALJ's conclusion that Plaintiff can drive during the daytime. (*See* Pl.'s Br., Doc. 17 at 16-17). "The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004) (citation omitted). The threshold for evidentiary sufficiency under the substantial evidence standard "is not high." *Biestek*, --- U.S. ---, 139 S. Ct. at 1154. Substantial evidence "means—and means only—such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

The ALJ's decision included an extensive discussion of Dr. Tyrrell's opinion and explanation of why the ALJ found it partially, but not entirely, persuasive. (*See* R. 24-26). The ALJ noted that, due to the side effects of Plaintiff's medication, "a limitation from medication is fair, given [Plaintiff's] treatment with a controlled substance." (R. 25). Specifically, the ALJ found that "the limitation of not driving at night [is] persuasive." *Id*. However, the ALJ also noted that Plaintiff's increased stress was primarily due to the conditions of his previous job. Dr. Tyrrell reported that Plaintiff's employer required him to be "on-call" during nights and weekends, and changed Plaintiff's job duties so that Plaintiff had "to travel more and get up at night, duties that increased his level of stress." (R. 25). Dr. Tyrrell stated that Plaintiff's work-related stress "has been well documented." (R. 356; R. 22; *see also, e.g.*, R. 436 (noting Plaintiff's "anxiety and stress have skyrocketed secondary to increased burden from work")).

Thus, as the ALJ reasonably observed, the evidence of record—including Plaintiff's testimony—indicated that the stress causing Plaintiff to sometimes take Xanax during the day was attributable to the conditions of his job. (*See* R. 21, 22, 24-25). The ALJ also noted that Plaintiff "was trying to limit his use of Xanax." (R. 22). As such, substantial evidence supports the ALJ's conclusion that Plaintiff did not require daytime driving restrictions.[2]

---

[2]     Plaintiff's daily activities suggest that generally, he is able to go out during the daytime. (*See* R. 53). He testified that he leaves his house "daily," for thirty minutes to four hours at a time, and that he routinely travels to Joplin, Missouri, to shop. (R. 44, 53).

Under substantial evidence review, the fact that another adjudicator might weigh the evidence differently does not constitute reversible error. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d at 1084. The court may not "reweigh the evidence or retry the case." *Wall*, 561 F.3d at 1052 (quotation omitted). Furthermore, Plaintiff has shown no legal error in the ALJ's analysis of the evidence in reaching the RFC determination. Accordingly, the Court must affirm the ALJ's RFC finding.

### B.    Past Relevant Work

Plaintiff asserts that the ALJ erred in concluding that he can perform his past relevant work as a cable television installer. In assessing a claimant's ability to do past relevant work, an ALJ must: 1) evaluate the claimant's RFC; 2) determine the demands of the claimant's past relevant work; and 3) compare the claimant's RFC with his past relevant work to determine whether the claimant can do this work. *See* S.S.R. 82-62, 1982 WL 31386, *2-3; *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).

Plaintiff contends the ALJ ignored evidence that he is unable to obtain the necessary federal driver's license to perform this work. Plaintiff testified that when he tried to renew his license, "the [Department of Transportation] guy told me that I need to not be taking [Xanax] when I'm driving." (R. 49). During the hearing, the VE confirmed that an individual must pass certain federal Department of Transportation requirements in order to drive a bucket truck, i.e., the type of vehicle Plaintiff used in his work as a cable installer. (*See* R. 50, 60-61). Plaintiff's representative questioned the VE about physical qualification

9

standards to drive a bucket truck:

> Q: And are you aware of any kind of medication preclusions from passing that physical?
>
> A: There are, yes, but I do not know specifically that list.

(R. 61).

"An ALJ may rely on information supplied by the VE at step four." *Doyal*, 331 F.3d at 761 (internal citation omitted). An ALJ is permitted to "quote the VE's testimony approvingly, in support of his own findings at phases two and three of the [step-four] analysis." *Id*. However, an ALJ may not "make RFC findings and then to delegate the remaining phases of the step four analysis to the [VE], because in such cases, 'the remainder of the step four assessment takes place in the VE's head' and 'we are left with nothing to review.'" *Id*. (citing *Winfrey v. Chater,* 92 F.3d 1017, 1025 (10th Cir. 1996)). "[W]hile the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Winfrey*, 92 F.3d at 1025.

In his decision, the ALJ cited the VE's testimony in finding that Plaintiff's past relevant work is skilled work at specific vocational preparation (SVP) level 5, generally performed at the heavy exertion level. (R. 26; *see* R. 56). The ALJ noted Plaintiff's testimony that, due to his prescribed usage of Xanax, he cannot pass the physical examination required to perform the job. (R. 21.) However, as the ALJ explained, Plaintiff was able to renew his license, even after informing the Department of Transportation about

his medications. (*Id*.; R. 26; *see id*. at 49).   Thus, the ALJ relied on Plaintiff's own testimony, as well as testimony by the VE, in concluding that Plaintiff can perform his past relevant work as generally performed. (*See* R. 26).

Plaintiff argues that the VE's testimony presented a conflict with the Dictionary of Occupational Titles (DOT) that the ALJ was required to resolve. "If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." SSR 00-04p. However, "[f]or a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016); *see also Brown v. Berryhill*, No. 17-cv-00556-GKF-GBC, 2019 WL 2488730, at *6 (N.D. Okla. 2019) (unpublished) (citing *Gutierrez*) (finding ALJ "was not required to ask more specific follow-up questions" of the VE, where "based on the DOT descriptions, no apparent or obvious conflict existed").[3]

Here, Plaintiff has failed to establish a conflict that the ALJ was required to resolve. Plaintiff did not present VE testimony or other evidence establishing that his medication would necessarily preclude him from obtaining the required license. To the contrary, Plaintiff confirmed in his testimony that he was never turned down for a license. (R. 61 ("Q: Did you submit your [license] for renewal? A: I did not. Q: Okay. So you were never

---

[3]     Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

turned down by [the Department of Transportation]? A: I was not. Q: Okay. Why didn't you turn it in to renew it? A: I did[sic] have a need to because I was no longer driving.")). As such, there was no "obvious or apparent" conflict between the VE's testimony and the requirements of Plaintiff's past relevant work as a cable installer. Plaintiff had the burden to show that his medically determinable impairments prevent him from performing his past work as a cable television installer. *See Lax*, 489 F.3d at 1084; *see also Barker v. Astrue*, 459 F. App'x 732, 741 (10th Cir. 2012) (unpublished) (noting that a "claimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy"). Here, as set forth above, substantial evidence supports the ALJ's conclusion that Plaintiff's medication does not preclude him from performing his past relevant work as generally performed.

In Plaintiff's submission to the Appeals Council, he included material from the federal Department of Transportation's website. Plaintiff argued in his letter to the Appeals Council that he would not be able to pass the required medical physical examination. (R. 294). However, the exhibit provided does not support his argument. The website specifies that, while a driver is deemed "medically unqualified" for a Commercial Motor Vehicle license if the driver uses certain substances, an exception exists if "the prescribing doctor . . . write[s] that the driver is safe to be a commercial driver while taking the medication." (R. 304, 330). As discussed above, Dr. Tyrrell's opinion indicates that Plaintiff can safely operate a commercial vehicle, so long as it is not within 4 hours of taking Xanax. (*See* R.

347-348).

Plaintiff also objects that, even with a limitation to driving during the daytime, he might be required to drive in the dark, such as during stormy weather, or after sunset during the wintertime. (Pl.'s Br., Doc. 17 at 8, 9). However, Plaintiff points to no opinion or medical evidence that he cannot drive in dark or stormy conditions, so long as he has not taken controlled substances during the daytime. Accordingly, this argument lacks merit.

As discussed above, the ALJ's decision addressed the work-related limitations he reasonably found to result from Plaintiff's medication. Substantial evidence supports the ALJ's conclusion. (*See* R. 47-48, 63; *see also* R. 347-348, 356). The hypothetical appropriately included "the need to take medication which precludes work at night because of the inability to drive at night." (R. 57). The VE testified that an individual with this limitation would be able to perform Plaintiff's past work as generally performed, although not as Plaintiff actually performed it. *Id*. The VE confirmed that "driving at night or working at night would not be required as generally performed" and explained that most companies do not require a person in this job "to work after 5 or 6:00 in the evening." (R. 57-58). Thus, there was no conflict the ALJ was required to resolve, and the ALJ properly relied on the VE's testimony that an individual with Plaintiff's RFC could perform his past relevant work.

## C.    Subjective Statements

Plaintiff argues that the ALJ failed to properly evaluate the consistency of Plaintiff's subjective complaints with the evidence of record. In evaluating a claimant's statements

regarding pain or other symptoms, the ALJ "must consider (1) whether [a c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the [c]laimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [the c]laimant's pain is in fact disabling." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citation omitted).

> When determining the credibility of pain testimony, the ALJ should consider such factors as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1489 (internal citations omitted).[4]

The ALJ must explain "the link between the evidence and credibility determination." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Under agency regulations, the ALJ's decision must give "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly

---

4    The agency no longer uses the term "credibility" to describe the ALJ's analysis of subjective symptoms. *See* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (the Commissioner "eliminat[ed] the use of the term 'credibility' from [the] sub-regulatory policy, as [the] regulations do not use this term," and "subjective symptom evaluation is not an examination of an individual's character"). However, the standard of review of the ALJ's consistency analysis is the same as when the agency used the term "credibility." *See, e.g., Zhu v. Comm'r, SSA*, --- F. App'x ---, 2021 WL 2794533, *5, n.7 (10th Cir. Jul. 6, 2021).

articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3p. However, "[c]redibility determinations are peculiarly the province of the finder of fact"—that is, the ALJ, not the court. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Kepler*, 68 F.3d at 391). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also* SSR 16-3p, 2016 WL 1237954.

First, Plaintiff argues that the ALJ failed to properly address his positive work history, noting that he worked consistently for nearly four decades. However, the ALJ's decision acknowledged Plaintiff's extensive work history with his previous employer. (*See* R. 21 (discussing Plaintiff's duties for "his long-time employer, CableOne," and that his "employer of 28 years" transferred him to a position requiring remote travel)). As such, this argument lacks merit.

Plaintiff's remaining arguments largely recycle the same objections to the RFC determination discussed above. In fact, the ALJ's decision addressed Plaintiff's testimony, noting that after being transferred, he was unable to navigate unfamiliar and remote locations. (R. 21). The ALJ also noted Plaintiff's anxiety symptoms and the limiting side effects of his medication. *See id.* As discussed above, the ALJ determined that Plaintiff's anxiety warranted a limitation in the RFC to preclude driving at night.

However, the ALJ found that Plaintiff's statements regarding his symptoms were not entirely consistent with other evidence in the record. *See id.* The decision discussed

evidence supporting this conclusion, including Plaintiff's treatment records, changes to his medication regime over time, his complaints to Dr. Tyrrell regarding work-related stress, and Dr. Tyrrell's physical and psychological observations. (*See* R. 21-26).  The ALJ found that Dr. Tyrrell's records did not support limitations on Plaintiff's ability to remember, comprehend, or carry out simple instructions, or to respond to work pressure. (*See* R. 24-25). Rather, the ALJ reasonably explained, Dr. Tyrrell "noted only increased stress from being placed on call by [Plaintiff's previous employer] and a change . . . in his job duties that required him to travel more and get up at night, duties that increased his levels of stress." *Id*. Furthermore, the ALJ noted Plaintiff had not presented evidence of any treatment of Plaintiff's psychological symptoms by a specialist. (R. 26). This fact further supports the ALJ's conclusion that treatment by Plaintiff's primary care physician was sufficient to address his psychological impairments. *See id*.

Accordingly, the ALJ sufficiently explained his evaluation of Plaintiff's statements. The ALJ supported his conclusion with analysis of the proper factors and reference to specific evidence in the record. *See Qualls*, 206 F.3d at 1372. Nothing further was required.

### D.    Post-Hearing Objections

Plaintiff argues that the ALJ committed reversible error by failing to address Plaintiff's post-hearing objections to the VE's testimony. Plaintiff asserts that, in a memorandum submitted to the ALJ, he objected that (1) the VE relied on erroneous factual assumptions, (2) the VE was not qualified to opine on Plaintiff's past relevant work, based on the VE's lack of experience placing individuals in that particular type of job, and (3)

16

due to Plaintiff's prescription for Xanax, he cannot obtain the Department of Transportation certification necessary to perform the job. (Doc. 17 at 12-13; *see also* R. 292-295).[5] The record indicates that Plaintiff asserted similar arguments in a letter challenging the ALJ's decision before the Appeals Council. (*See, e.g.*, R. 292-295).

However, Plaintiff points to no binding or persuasive authority within the Tenth Circuit that an ALJ must expressly respond to objections not asserted until after the hearing. (*Cf.* Doc. 17 at 12 n.5). Moreover, another court within the Tenth Circuit has rejected a similar argument. *See Rockholt v. Berryhill*, No. CIV-17-578-G, 2018 WL 4462231, at *7 (W.D. Okla. Sept. 18, 2018) (unpublished) (noting that while the Agency's Hearings, Appeals, and Litigation Law Manual (HALLEX) directs an ALJ to rule on objections raised on the record during a hearing, "the plain language of this subsection directs that an ALJ rule on objections to the VE testimony raised on the record *during* the administrative hearing," but does not include the same requirement for post-hearing objections); *accord Horner v. Berryhill*, No. 17-C-4823, 2018 WL 1394038, at *2 (N.D. Ill. Mar. 20, 2018) (unpublished) ("Because HALLEX does not compel an ALJ to rule on objections to VE testimony posed after a hearing has ended, the ALJ's failure to do so in this case was not erroneous."). The Court finds this reasoning persuasive as applied to Plaintiff's post-hearing objections in this case.

---

[5]     As noted in Defendant's response, although Plaintiff's Opening Brief references his post-hearing memorandum, Plaintiff did not file a copy of his post-hearing submission. (*See* Doc. 17 at 10-13; Doc. 18 at 9).

Additionally, even if the ALJ erred in failing to address the post-hearing objections in writing, the Court can find no resulting harm based on the record. *See Lee v. Colvin*, 631 F. App'x 538, 543 (10th Cir. 2015) (unpublished) ("Assuming without deciding" that relief can be granted for HALLEX violations, the Tenth Circuit has held that "only prejudicial violations of HALLEX provisions entitle a claimant to relief."). Plaintiff's post-hearing arguments, as reflected in his opening brief and in the post-hearing evidence in the record, largely restate the same arguments Plaintiff has asserted in this appeal. For the reasons set forth throughout this Opinion and Order, the Court finds no basis for remand of the ALJ's decision.

## V.     Conclusion

The undersigned finds the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

SO ORDERED this 30th day of March, 2022.


Christine D. Little
United States Magistrate Judge